Barry I. Gold, Esq., SBN: 57118
SHAFFER, GOLD & RUBAUM, LLP
12011 San Vicente Boulevard, Suite 600
Los Angeles, CA 90049-4948
Telephone: (310) 476-9955
Facsimile: (310) 471-0482
bgold@sgr4law.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| A&B BEVERAGE COMPANY, LLC; A. CAPPIONE, INC.; ADAMS BEVERAGES OF NY, LLC; AJAX TURNER COMPANY, INC.; AMERICAN EAGLE DISTRIBUTING, CO.; ARK VALLEY DISTRIBUTING, INC.; ARTHUR R. GREN COMPANY, INC.; BOB RALPH DIST. CO., INC.; BROWN DISTRIBUTING COMPANY, INC.; CARDIN DISTRIBUTING COMPANY; CENTRAL DISTRIBUTORS INC.; CITY BEVERAGE COMPANY, INC.; CLARK DISTRIBUTING COMPANY, INC.; CLARKE DISTRIBUTORS, INC.; COUNTY DISTRIBUTING CO., INC.; DANA DISTRIBUTORS INC.; DEMO DISTRIBUTORS, INC.; DUTCHESS BEER DISTRIBUTORS, INC.; EAGLE BEVERAGE CORPORATION; ED F. DAVIS, INC.; FARRELL DISTRIBUTING CORPORATION; FEDERAL DISTRIBUTORS, INC.; FLINT HILLS BEVERAGE, LLC; G. HOUSEN & COMPANY, INC.; GREAT RIVERS DISTRIBUTING COMPANY, INC.; GREAT STATE BEVERAGES, INC.; HOCH, INC. d/b/a H&H DISTRIBUTING; HOFFMAN BEVERAGE CO.; HOUSE OF SCHWAN, INC.; J.F. FICK, INC.; L&H DISTRIBUTING COMPANY, INC.; LAKE BEVERAGE CORPORATION; LAMONICA BEVERAGES INC.; LUECKE DISTRIBUTING COMPANY, INC.; M. PRICE DISTRIBUTING CO.; MAGIC CITY BEVERAGE CO. INC.; MAINE DISTRIBUTORS; MULLALLY DISTRIBUTING CO., INC.; NATIONAL DISTRIBUTORS, INC.; NEMONT BEVERAGE CORPORATION; NEW HAMPSHIRE DISTRIBUTORS, LLC; NORTHERN | CASE NO. 2:15-CV-03548<br><br>COMPLAINT FOR:<br><br>1. INTERFERENCE WITH CONTRACTUAL RELATIONS; AND<br><br>2. MISAPPROPRIATION OF TRADE SECRETS (CAL. CIV. CODE § 3436 ET SEQ.<br><br>[DEMAND FOR JURY TRIAL] |

1
COMPLAINT

EAGLE BEVERAGES, INC.; O'MALLEY )
BEVERAGE, INC.; O'MALLEY BEVERAGE OF )
KANSAS, INC.; OWEGO BEVERAGE COMPANY, )
LLC d/b/a EAGLE BEVERAGE COMPANY; )
PESTINGER DISTRIBUTING CO., INC.; QUEEN )
CITY BEVERAGE, INC. d/b/a BRAUN )
DISTRIBUTING; R.A. JEFFERIES DISTRIBUTING )
COMPANY, LLC; R.H. BARRINGER )
DISTRIBUTING CO., INC.; RIVER EAGLE )
DISTRIBUTING CO.; R.L. LIPTON )
DISTRIBUTING, LLC; ROCCO J. TESTANI, INC.; )
SANDHILLS DISTRIBUTING LLC; SANZO )
BEVERAGE CO., INC.; SARATOGA EAGLE )
SALES & SERVICE, INC.; SENECA WHOLESALE )
COMPANY, INC.; STANDARD SALES )
COMPANY, L.P.; STRATHMAN SALES )
COMPANY, INC.; SUPERIOR BEVERAGE CO.; )
UNITED BEVERAGE CO., LP; VALLEY )
DISTRIBUTORS, INC.; VENTURE SOUTH )
DISTRIBUTORS, INC. d/b/a CENTENNIAL )
DISTRIBUTING; VIDRICKSEN DISTRIBUTING )
COMPANY, INC.; VIRGINIA EAGLE )
DISTRIBUTING COMPANY, LLC; VOLUNTEER )
DISTRIBUTING COMPANY, INC.; WESTERN )
BEVERAGE, INC.; WIL FISCHER DISTRIBUTING )
CO.; AND WIL FISCHER DISTRIBUTING OF )
KANSAS, LLC, )
                                                )
        Plaintiffs,                             )
                                                )
v.                                              )
                                                )
THE COCA-COLA COMPANY,                          )
                                                )
        Defendant.                              )

Plaintiffs, A&B Beverage Company, LLC, A. Cappione, Inc., Adams Beverages of NC LLC, Ajax Turner Company, Inc., American Eagle Distributing, Co., Ark Valley Distributing, Inc., Arthur R. Gren Company, Inc., Bob Ralph Dist. Co., Inc., Brown Distributing Company, Inc., Cardin Distributing Company, Central Distributors Inc., City Beverage Company, Inc., Clark Distributing Company, Inc., Clarke Distributors, Inc., County Distributing Co., Inc., Dana

Distributors Inc., Demo Distributors, Inc., Dutchess Beer Distributors, Inc., Eagle Beverage Corporation, Ed F. Davis, Inc., Farrell Distributing Corporation, Federal Distributors, Inc., Flint Hills Beverage, LLC, G. Housen & Company, Inc., Great Rivers Distributing Company, Inc., Great State Beverages, Inc., Hoch, Inc. d/b/a H&H Distributing, Hoffman Beverage Co., House of Schwan, Inc., J.F. Fick, Inc., L&H Distributing Company, Inc., Lake Beverage Corporation, LaMonica Beverages Inc., Luecke Distributing Company, Inc., M. Price Distributing Co., Magic City Beverage Co. Inc., Maine Distributors, Mullally Distributing Co., Inc., National Distributors, Inc., Nemont Beverage Corporation, New Hampshire Distributors, LLC, Northern Eagle Beverages, Inc., O'Malley Beverage, Inc., O'Malley Beverage of Kansas, Inc., Owego Beverage Company, LLC d/b/a Eagle Beverage Company, Pestinger Distributing Co., Inc., Queen City Beverage, Inc. d/b/a Braun Distributing, R.A. Jefferies Distributing Company, LLC, R.H. Barringer Distributing Co., Inc., River Eagle Distributing Co., R.L. Lipton Distributing, LLC, Rocco J. Testani, Inc., Sandhills Distributing LLC, Sanzo Beverage Co., Inc., Saratoga Eagle Sales & Service, Inc., Seneca Wholesale Company, Inc., Standard Sales Company, L.P., Strathman Sales Company, Inc., Superior Beverage Co., United Beverage Co., LP, Valley Distributors, Inc., Venture South Distributors, Inc. d/b/a Centennial Distributing, Vidricksen Distributing Company, Inc., Virginia Eagle Distributing Company, LLC, Volunteer Distributing Company, Inc., Western Beverage, Inc., Wil Fischer Distributing Co., Wil Fischer Distributing of Kansas, LLC, (collectively "Plaintiffs"), by their attorneys Shaffer, Gold & Rubaum, LLP, as and for their complaint against The Coca-Cola Company ("CCC") allege as follows:

## THE NATURE OF THE CASE

1. This lawsuit arises out of CCC's intentional inference with distribution agreements ("Agreements") entered into between the Plaintiffs, family owned beverage distributors, and Monster Energy Company, f/k/a Hansen Beverage Company's ("Monster"), a $10 billion energy drink manufacturer based in California. Driven by a desire to capitalize on the tremendous growth in Monster's energy drink sales revenues, resulting in large part from the efforts of Plaintiffs and other similarly situated Anheuser-Busch distributors, in or about August 2014, CCC entered into an agreement with Monster to purchase a 17% interest in Monster's business for the amount of $2.15 billion ("CCC Agreement"). Attempting to seize upon and convert the tremendous goodwill and proprietary information that Plaintiffs have developed in their respective territories, as part of the CCC Agreement, CCC required that Monster terminate those Anheuser-Busch (including Plaintiffs) distributors in locations where CCC already had a competing distribution network and where state franchise laws did not explicitly prohibit termination, and appoint those distributers currently in CCC's distribution network ("CCC Distributors"). Accordingly, upon closing of its transaction with CCC ("CCC Transaction"), Monster, as required by the CCC Agreement, terminated those Agreements, including Plaintiffs' Agreements.

2. Prior to CCC's inducement of termination, the relationships between the Plaintiffs and Monster was a successful business relationship that by all accounts was poised to last the entire 20 year term of the Agreements and renew thereafter. In fact, due in large part to the efforts of Plaintiffs, Monster grew from

4
COMPLAINT

a run-of-the-mill brand into a premier energy drink company valued at over $10 billion. Those efforts included the devotion of significant time and resources to get Monster energy drink products ("Monster Products") on store shelves and into restaurants and bars, where it could be visible to the public. It was this growth into a premiere energy drink brand, due in large part to the efforts of Plaintiffs and other similarly situated Anheuser-Busch distributors, which caused CCC to enter into the CCC Agreement in the first place. Nevertheless, disregarding all of the expenditures made by Plaintiffs, CCC callously interfered with the Agreements and caused them to be terminated. Not only has CCC caused the Agreements to be terminated, but upon termination, upon information and belief, CCC has acquired and transferred to each of the CCC Distributors, confidential, proprietary and trade secret information owned by Plaintiffs.

3. Accordingly, Plaintiffs bring this action in order to obtain judgment that, *inter alia*, CCC has (i) intentionally interfered with the Agreements and (ii) violated Cal. Civ. Code § 3426, *et seq*. Plaintiffs seek damages to compensate Plaintiffs for the loss of the distribution rights to the Monster Products as a result of CCC's interference.

## THE PARTIES

4. Plaintiff, A&B Beverage Company, LLC is an Oklahoma limited liability company with its principal place of business located at 3901 Tull Ave., Muskogee, Oklahoma.

5. Plaintiff, A. Cappione, Inc. is a New York State corporation with its principal place of business located at 52-54 Liberty Avenue, Massena, New York.

6. Plaintiff, Adams Beverages of NC LLC is a North Carolina limited liability company with its principal place of business located at 7505 Statesville Road, Charlotte, North Carolina.

7. Plaintiff, Ajax Turner Company, Inc. is a Tennessee corporation with its principal place of business located at 4010 Centre Pointe Way, La Vergne, Tennessee.

8. Plaintiff, American Eagle Distributing, Co. is a Colorado corporation with its principal place of business located at 3800 Clydesdale Pkwy, Loveland, Colorado.

9. Plaintiff, Ark Valley Distributing, Inc. is a Kansas corporation with its principal place of business located at 7748 2nd Avenue Strother Field, Arkansas City, Kansas.

10. Plaintiff, Arthur R. Gren Company, Inc. is a New York State corporation with its principal place of business located at 1886 Mason Drive, Jamestown, New York.

11. Plaintiff, Bob Ralph Dist. Co., Inc. is a Missouri corporation with its principal place of business located at 115 Larcel Drive, Sikeston, Missouri.

12. Plaintiff, Brown Distributing Company, Inc. is a Virginia corporation with its principal place of business located at 7986 Villa Park Dr., Richmond, Virginia.

13. Plaintiff, Cardin Distributing Company is a Tennessee corporation with its principal place of business located at 1219 West College Street, Pulaski, Tennessee.

14. Plaintiff, Central Distributors Inc. is a Tennessee corporation with its principal place of business located at P.O. Box 1762, Jackson, Tennessee.

15. Plaintiff, City Beverage Company, Inc. is a Kansas corporation with its principal place of business located at 2 South Kirby, Hutchinson, Kansas.

16. Plaintiff, Clark Distributing Company, Inc. is a Tennessee corporation with its principal place of business located at 1300 Hwy 51 Bypass South, Dyersburg, Tennessee.

17. Plaintiff, Clarke Distributors, Inc. is a New Hampshire corporation with its principal place of business located at 472 Winchester Street, Keene, New Hampshire.

18. Plaintiff, County Distributing Co., Inc. is a Missouri corporation with its principal place of business located at 1800 Eagleview Drive, Sedalia, Missouri.

19. Plaintiff, Dana Distributors Inc. is a New York State corporation with its principal place of business located at 52 Hatfield Lane, Goshen, New York.

20. Plaintiff, Demo Distributors, Inc. is a Kansas corporation with its principal place of business located at 202 W. 5th Ave., El Dorado, Kansas.

21. Plaintiff, Dutchess Beer Distributors, Inc. is a New York State corporation with its principal place of business located at 5 Laurel Street, Poughkeepsie, New York.

22. Plaintiff, Eagle Beverage Corporation is a Kansas corporation with its principal place of business located at 250 N. Cayuga, Frontenac, Kansas.

23. Plaintiff, Ed F. Davis, Inc. is an Oklahoma corporation with its principal place of business located at 2600 Westside Drive, Durant, Oklahoma.

24. Plaintiff, Farrell Distributing Corporation is a Vermont corporation with its principal place of business located at 5 Holmes Road, South Burlington, Vermont.

25. Plaintiff, Federal Distributors, Inc. is a Maine corporation with its principal place of business located at 2075 Lisbon Road, Lewiston, Maine.

26. Plaintiff, Flint Hills Beverage, LLC is a Kansas limited liability company with its principal place of business located at 132 W. Market St., Osage City, Kansas.

27. Plaintiff, G. Housen & Company, Inc. is a Vermont corporation with its principal place of business located at 1568 Putney Road, Brattleboro, Vermont.

28. Plaintiff, Great Rivers Distributing Company, Inc. is a Missouri corporation with its principal place of business located at 4232 ODC 1060, Pomona, Missouri.

29. Plaintiff, Great State Beverages, Inc. is a New Hampshire corporation with its principal place of business located at 1000 Quality Drive, Hooksett, New Hampshire.

30. Plaintiff, Hoch, Inc. d/b/a H&H Distributing is a Nebraska corporation with its principal place of business located at 4221 Juergen Road, Grand Island, Nebraska.

31. Plaintiff, Hoffman Beverage Co. is a Virginia corporation with its principal place of business located at 5465 Greenwich Road, Virginia Beach, Virginia.

32. Plaintiff, House of Schwan, Inc. is a Kansas corporation with its

principal place of business located at 3636 N. Comotara, Wichita, Kansas.

33. Plaintiff, J.F. Fick, Inc. is a Virginia corporation with its principal place of business located at 224 Industrial Court, Fredericksburg, Virginia.

34. Plaintiff, L&H Distributing Company, Inc. is a Tennessee corporation with its principal place of business located at 1309 North Washington Street, Tullahoma, Tennessee.

35. Plaintiff, Lake Beverage Corporation is a New York State corporation with its principal place of business located at 900 John St., West Henrietta, New York.

36. Plaintiff, LaMonica Beverages Inc. is an Illinois corporation with its principal place of business located at 4060 Rock Valley Parkway, Loves Park, Illinois.

37. Plaintiff, Luecke Distributing Company, Inc. is a Missouri corporation with its principal place of business located at 432 E. Outer Road, Popular Bluff, Missouri.

38. Plaintiff, M. Price Distributing Co. is a Virginia corporation with its principal place of business located at 1 Budweiser Street, Hampton, Virginia.

39. Plaintiff, Magic City Beverage Co. Inc. is a North Dakota corporation with its principal place of business located at 3025 Burdick Expressway, East Minot, North Dakota.

40. Plaintiff, Maine Distributors is a Maine corporation with its principal place of business located at 5 Coffey Street, Bangor, Maine.

41. Plaintiff, Mullally Distributing Co., Inc. is a Missouri corporation

with its principal place of business located at 1401 Martin Street, Cuba, Missouri.

42. Plaintiff, National Distributors, Inc. is a Maine corporation with its principal place of business located at 116 Wallace, South Portland, Maine.

43. Plaintiff, Nemont Beverage Corporation is a Montana corporation with its principal place of business located at 172 Hwy. 24 North, Glasgow, Montana.

44. Plaintiff, New Hampshire Distributors, LLC is a New Hampshire limited liability Company with its principal place of business located at 65 Regional Drive, Concord, New Hampshire.

45. Plaintiff, Northern Eagle Beverages, Inc. is a New York State corporation with its principal place of business located at 7 Railroad Ave., Oneonta, New York.

46. Plaintiff, O'Malley Beverage, Inc. is a Missouri corporation with its principal place of business located at 1601 North Woodbine, St. Joseph, Missouri.

47. Plaintiff, O'Malley Beverage of Kansas, Inc. is a Kansas corporation with its principal place of business located at 2050 Packer Court, Lawrence, Kansas.

48. Plaintiff, Owego Beverage Company, LLC d/b/a Eagle Beverage Company is a New York State limited liability company with its principal place of business located at 1043 County Route 25, Oswego, New York.

49. Plaintiff, Pestinger Distributing Co., Inc. is a Kansas corporation with its principal place of business located at 3039 U.S. Hwy 24, Beloit, Kansas.

50. Plaintiff, Queen City Beverage, Inc. d/b/a Braun Distributing is a

North Dakota corporation with its principal place of business located at 153 26th Street West, Dickinson, North Dakota.

51. Plaintiff, R.A. Jefferies Distributing Company, LLC is a North Carolina limited liability company with its principal place of business located at 420 Civic Blvd., Raleigh, North Carolina.

52. Plaintiff, R.H. Barringer Distributing Co., Inc. is a North Carolina corporation with its principal place of business located at 1620 Fairfax Road, Greensboro, North Carolina.

53. Plaintiff, River Eagle Distributing Co. is a Missouri corporation with its principal place of business located at 2346 Rust Ave., Cape Girardeau, Missouri.

54. Plaintiff, R.L. Lipton Distributing, LLC is an Ohio limited liability company with its principal place of business located at 425 Victoria Road, Suite B, Austintown, Ohio.

55. Plaintiff, Rocco J. Testani, Inc. is a New York State corporation with its principal place of business located at 29 Phelps St., Binghamton, New York.

56. Plaintiff, Sandhills Distributing LLC is a Nebraska limited liability company with its principal place of business located at 720 Lake Dr., North Platte, Nebraska.

57. Plaintiff, Sanzo Beverage Co., Inc. is a New York State corporation with its principal place of business located at 3165 Route 16 N., Olean, New York.

58. Plaintiff, Saratoga Eagle Sales & Service, Inc. is a New York State corporation with its principal place of business located at 45 Duplainville Road,

Saratoga Springs, New York.

59. Plaintiff, Seneca Wholesale Company, Inc. is a Kansas corporation with its principal place of business located at 36 South 8th Street, Seneca, Kansas.

60. Plaintiff, Standard Sales Company, L.P. is a limited partnership with its principal place of business located at 4800 E. 42nd Street, Odessa, Texas.

61. Plaintiff, Strathman Sales Company, Inc. is a Kansas corporation with its principal place of business located at 4235 SW Burlingame Rd., Topeka, Kansas.

62. Plaintiff, Superior Beverage Co. is an Illinois corporation with its principal place of business located at 1070 Orchard Rd., Montgomery, Illinois.

63. Plaintiff, United Beverage Co., LP is a limited partnership with its principal place of business located at 1903 Woodland Ave., Kansas City, Missouri.

64. Plaintiff, Valley Distributors, Inc. is a Maine corporation with its principal place of business located at 534 Belgrade Rd., Oakland, Maine.

65. Plaintiff, Venture South Distributors, Inc. d/b/a Centennial Distributing is an Idaho corporation with its principal place of business located at 1640 Kimberly Road, Twin Falls, Idaho.

66. Plaintiff, Vidricksen Distributing Company, Inc. is a Kansas corporation with its principal place of business located at 1825 Bailey Rd., Salina, Kansas.

67. Plaintiff, Virginia Eagle Distributing Company, LLC is a Missouri limited liability company with its principal place of business located at 827 Lee Highway, Verona, Virginia.

68. Plaintiff, Volunteer Distributing Company, Inc. is a Tennessee corporation with its principal place of business located at P.O. Box 1762, Jackson, Tennessee.

69. Plaintiff, Western Beverage, Inc. is a Kansas corporation with its principal place of business located at 301 E Wyatt Earp, Dodge City, Kansas.

70. Plaintiff, Wil Fischer Distributing Co. is a Missouri corporation with its principal place of business located at 3539 W. Farm Rd., Springfield, Missouri.

71. Plaintiff, Wil Fischer Distributing of Kansas, LLC is a Missouri limited liability company with its principal place of business located at 17501 W. 98th Street, #18-49, Lenexa, Kansas.

72. Upon information and belief, Defendant CCC is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1 Coca-Cola Plaza, Atlanta, Georgia.

73. Plaintiffs are duly licensed, multi-brand distributors of alcoholic and non-alcoholic beverage products within the United States. Plaintiffs' primary alcoholic brand is Anheuser-Busch (Budweiser). Plaintiffs are part of a nationwide network of Budweiser distributors. Plaintiffs have developed through the investment of significant time and expense, extensive goodwill, including private and proprietary account level information, in the territories they serve.

74. CCC is a manufacturer of beverage products that are distributed and sold worldwide.

## JURISDICTION AND VENUE

75. This Court has jurisdiction over this action pursuant to 28 U.S.C.

§1332(a)(1) because Plaintiffs are a citizens of New York, Virginia, North Carolina, North Dakota, Missouri, Kansas, Tennessee, Idaho, Illinois, Nebraska, Montana, Maine, New Hampshire, Vermont, Oklahoma, Colorado, Ohio and CCC is a citizen of Georgia, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

76. Venue lies in this District pursuant to 28 U.S.C. §1391(b)(2) and (b)(3).

## PLAINTIFFS' RELATIONSHIP WITH MONSTER

77. Over the past decade Plaintiffs, each individually, purchased the distribution rights to Monster Products in specified territories for the fair value at that time. Upon purchasing the rights, each Plaintiff entered into virtually identical distribution agreements with Monster ("Agreements") wherein each Plaintiff was named the exclusive distributor for Monster Products in a specified territory. The term of each of the Agreements was for 20 years. Monster's primary place of business is in California, and as such the Agreements provided that they were governed by California law. In addition, a significant portion of the performance of the Agreements occurred within the state of California.

78. Since entering into the Agreements, Plaintiffs have helped to transform the Monster brand into a premier energy drink brand, with an estimated value of over $10 billion.

79. Such growth came about due in large part to the investment of time, effort and money by Plaintiffs.

80. In fact, as a result of the Plaintiffs' goodwill, including private and

proprietary account level information, Plaintiffs' continued investment in the Monster brand and their efforts and hard work, sales of Monster Products have increased dramatically in each Plaintiff's territory. Without the efforts of the Plaintiffs, Monster would not have enjoyed the immense growth that it has in the industry and the corresponding increase in value of its company.

81. Also by reason of the great success the Monster brands have achieved in the industry through the efforts of the Plaintiffs, the value of distribution rights for Monster products has also grown significantly.

## CCC/MONSTER TRANSACTION

82. Upon information and belief, for many years CCC has been attempting to become a major manufacturer in the energy drink industry, without significant success. While CCC has introduced energy brand products, CCC and the CCC Distributors have been unable to successfully compete with the major energy drink brands, Monster and Red Bull.

83. Accordingly, desiring to increase its share of the energy drink market, CCC sought to purchase an ownership interest in a successful energy drink brand.

84. As such, in or about August 2014, Monster and CCC entered into an Agreement whereby CCC would purchase a 17% share of Monster for the amount of $2.15 billion.

85. However, rather than retain the distributors that contributed to the success of the Monster brand, in agreeing to purchase an ownership interest in Monster, CCC required that upon closing of the CCC Transaction, Monster would terminate any Anheuser-Busch distributor in a specific territory where CCC had a

competing distribution network and where state franchise laws did not prohibit termination, and appoint the CCC Distributors.

86. While the CCC Agreement was executed in August 2014, since the CCC Transaction raised antitrust concerns, the closing of the CCC Transaction was placed on hold until regulatory approval was received.

87. However, even though the CCC Transaction had not closed, CCC continued its efforts to cause the termination of the Agreements.

88. In particular, in preparation for the termination of Plaintiffs' Agreements, CCC required Monster to circulate drafts of distribution agreements to the CCC Distributors.

89. In fact, upon information and belief, at the direction of CCC, several of the CCC Distributors began distributing Monster Products in certain territories bound by one or more of Plaintiffs' agreements with Monster, even though the Plaintiff in each of those territories still retained the exclusive right to distribute Monster Products in such territory.

90. Upon learning that CCC was attempting to induce the termination of Plaintiffs' Agreements and that CCC Distributors were wrongfully distributing Monster Products in certain territories, on or about December 23, 2014, Plaintiffs' attorney sent a cease and desist letter to CCC notifying CCC that (i) its acts in inducing a potential termination of Respondent's Agreement was an intentional interference with contract; (ii) CCC should cease and desist from inducing such terminations, and (iii) CCC Distributors must cease and desist from selling Monster Products in Plaintiffs' exclusive territories.

91. To date, CCC has not responded to the CCC Desist Letter.

92. Instead, its scheme to cause the termination of the Agreements reached fruition on or about February 10, 2015, when Monster, in accordance with CCC's requirement in the CCC Agreement, issued termination notices to Plaintiffs, effective April 5, 2015 (and certain other dates for a small number of the Plaintiffs) (the "Termination Date").[1]

93. Upon information and belief, as required by CCC, Monster contemporaneously entered into distribution agreements with the CCC Distributors, effective upon termination of the Agreements, and, upon information and belief, wrongfully caused the transfer of all confidential and proprietary information developed and owned by Plaintiffs to the CCC Distributors.

94. In addition, even though Plaintiffs continued to hold exclusive distribution rights in each of their territories until the Termination Date, upon information and belief, at the direction of CCC, several CCC Distributors continued to distribute Monster Products to Plaintiffs' exclusive customers, including Walmart.

## FIRST CLAIM
### (Intentional Interference with Contractual Relations)

95. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 94 as if more fully set forth at length herein.

96. When CCC entered into the CCC Agreement it was aware that Plaintiffs had 20 year term Agreements with Monster for the exclusive right to

---

[1] Monster purported to terminate the Agreements without cause pursuant to its terms. However, Plaintiffs' assert that they were wrongfully terminated, and such claims are being tried in arbitration before JAMS.

distribute Monster Products in specified territories.

97. Through the conduct set forth above, CCC acted so as to induce Monster to terminate the Agreements.

98. CCC's acts have caused the termination and disruption of Plaintiffs' Agreements.

99. Plaintiffs have been damaged by CCC's intentional interference with the Agreements.

100. By reason of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial but no less than the fair market value of the distribution rights to the Monster Products, which Plaintiffs believe, based on industry standards, to be an amount between 6 and 7 times each Plaintiff's annual gross profits generated from the Monster products, plus costs and attorneys' fees.

## SECOND CLAIM
### (Misappropriation of Trade Secrets, Cal. Civ. Code § 3426 *et* seq.)

101. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs 1 through 94 hereof with the same force and effect as if more fully set forth at length herein.

102. Plaintiffs developed significant goodwill in a large customer base, including private and proprietary account level information prior to entering into the Agreement.

103. Plaintiffs goodwill, customer base and customer account level information were created by Plaintiffs through years of hard work and substantial financial investment.

104. Plaintiffs' customer account level information is a trade secret as it is information that provides Plaintiffs with an economic advantage and is not readily known to the public.

105. Plaintiffs have taken steps to ensure that this trade secret information is kept confidential.

106. Upon information and belief, CCC has misappropriated such confidential, proprietary trade secret information by improperly disclosing, and causing Monster to disclose, such information to the CCC Distributors who will in turn use that information to compete against Plaintiffs, post-termination, and as such, is in violation of Cal. Civ. Code § 3426 *et seq.*

107. By reason of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial but no less than the fair market value of the distribution rights to the Monster Products, which Plaintiffs believe, based on industry standards, to be an amount between 6 and 7 times each Plaintiff's annual gross profits generated from the Monster products, plus costs and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request judgment as follows:

1. On the First Claim, damages in an amount to be determined at trial but no less than the fair market value of the distribution rights to the Monster Products, which Plaintiffs believe, based on industry standards, to be an amount between 6 and 7 times each Plaintiff's annual gross profits generated from the Monster products, plus costs and attorneys' fees;

2. On the Second Claim, damages in an amount to be determined at trial but no less than the fair market value of the distribution rights to the Monster

Products, which Plaintiffs believe, based on industry standards, to be an amount between 6 and 7 times each Plaintiff's annual gross profits generated from the Monster products, plus costs and attorneys' fees;

    3.    Granting Plaintiffs their costs and attorneys' fees; and

    4.    Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all claims raised in this matter.

Dated: May 12, 2015

Respectfully submitted,

SHAFFER, GOLD & RUBAUM, LLP

By: /s/ Barry I. Gold
BARRY I. GOLD, ESQ.
bgold@sgr4law.com
SHAFFER, GOLD & RUBAUM, LLP
12011 San Vicente Boulevard, Suite 600
Los Angeles, CA 90049-4948
Telephone: (310) 476-9955
Facsimile: (310) 471-0482

Attorneys for Plaintiffs

20
COMPLAINT